UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY SIMPSON, JR., <br><br> Plaintiff <br><br> v. <br><br> INTERSCOPE GIFFEN A&M RECORDS, a division of UMG RECORDINGS, INC. et al., <br><br> Defendants. | CASE NO. 1:09-CV-1931 AWI SKO <br><br> ORDER DENYING WRIT OF QUO WARRANTO <br><br> (Document #64) |

## BACKGROUND

This action was brought by plaintiff Jerry Simpson, Jr. ("Plaintiff"), a pro se litigant, against defendant Interscope Giffen A&M Records (erroneously sued as "Innerscope A&M Giffen Records") ("Defendant"). Plaintiff's First Amended Complaint was a 58-page assemblage of what appeared to be communications to and from the Court, along with some drawings of the product in question and correspondence with a firm called Lambert & Lambert, which appeared to be an inventor's consultation business.

Liberally reading the First Amended Complaint, the basis of Plaintiff's action appeared to be a patent violation. Apparently sometime around 2002, Plaintiff conceived a device called an "Arch Edge Were Wing Extension Free Weight Butterfly Press" (hereinafter, the "Butterfly Press"). Plaintiff sent his drawings to Lambert & Lambert. The Butterfly Press appeared to be an exercise device. One component of the Butterfly Press was referred to as a "center cut weight", which appears to be a weight on a bar with the area between the center and the radius of

the weight cut out in a pattern.   The focus of Plaintiff's First Amended Complaint was a 2006 music video produced by Defendants featuring singer Stacy Ann Ferguson (whose stage name is "Fergie") and the group "Black Eyed Peas."   In some part of the video, Fergie is seen in a gym exercising with weights.   Plaintiff appeared to allege Fergie used a weight that closely resembled Plaintiff's Butterfly Press.   After reviewing the complaint, the Court concluded that:   "It is Plaintiff's apparent belief that he is entitled to compensation from Defendants because something that has the general physical appearance of a component of an assembly Plaintiff had designed was used as a prop in a music video."

On May 26, 2011, the Court dismissed the First Amended Complaint.   The Court recognized that "[d]uring its term, a valid patent excludes all except its owner from the use of the protected process or product. [. . . .] This monopoly may be enjoyed exclusively by the patentee or he may assign the patent 'or any interest therein' to others." United States v. Line Material Co., 333 U.S. 287, 308-09 (1948)  (internal citation omitted).   However, the Court found that Plaintiff had neither alleged nor established any exclusive right to the Butterfly Press or any portion of it by patent or any other legal process.   Thus, the Court dismissed the First Amended Complaint and closed this action.

Plaintiff appealed this Court's dismissal.   The Ninth Circuit Court of Appeal dismissed the appeal because it was untimely filed.

On September 19, 2013, Plaintiff filed a document entitled "Quo warranto", which the Court construes as a motion for the Court to grant a writ of *quo warranto*.   Defendant filed a response to Plaintiff's document, and Plaintiff filed a reply.

**DISCUSSION**

Black's Law Dictionary  defines *quo warranto* as a "common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." Drake v. Obama, 664 F.3d 774, 784 (9th Cir. 2011).   Historically, a petition for writ of *quo warranto* was used by the King of England to determine if an individual's claim to an office or franchise was "well-founded", and if the individual's claim was found to be an unlawful possession, the individual would be ousted. Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1131 n.5 (9th Cir. 1994).   In

the United States, the Supreme Court has long made it clear that any *quo warranto* writ remains the Government's inherent right. Territory of Neb. v. Lockwood, 3 Wall. 236, 70 U.S. 236, 240 (1865). Issuing a writ of *quo warranto* "is an extraordinary proceeding, prerogative in nature, and . . . there is no statute delegating to an individual the right to resort to it." Johnson v. Manhattan Ry. Co., 289 U.S. 479, 502 (1933).

The United States Supreme Court has described the writ of *quo warranto* as follows*:*

> When the National Bank Act was enacted in 1864, "visitation" was accordingly understood as "[t]he act of examining into the affairs of a corporation" by "the government itself." 2 J. Bouvier, A Law Dictionary 790 (15th ed. 1883). Lower courts understood "visitation" to mean "the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regulations." First Nat. Bank of Youngstown v. Hughes, 6 F. 737, 740 (C.C.N.D.Ohio 1881). A State was the "visitor" of all companies incorporated in the State, simply by virtue of the State's role as sovereign: The "legislature is the visitor of all corporations founded by it." Guthrie v. Harkness, 199 U.S. 148, 157, 26 S.Ct. 4, 50 L.Ed. 130 (1905) (internal quotation marks omitted).
> This relationship between sovereign and corporation was understood to allow the States to use prerogative writs—such as mandamus and quo warranto—to exercise control "whenever a corporation [wa]s abusing the power given it, or, ... or acting adversely to the public, or creating a nuisance." H. Wilgus, Private Corporations, in 8 American Law and Procedure § 157, pp. 224–225 (1910). State visitorial commissions were authorized to "exercise a general supervision" over companies in the State. I. Wormser, Private Corporations § 80, pp. 100, 101, in 4 Modern American Law (1921).
> . . . .
> . . . . In sum, the unmistakable and utterly consistent teaching of our jurisprudence, both before and after enactment of the National Bank Act, is that a sovereign's "visitorial powers" and its power to enforce the law are two different things. There is not a credible argument to the contrary.

Cuomo v. Clearing House Ass'n, L.L.C., 557 U.S. 519, 526-29 (2009).

Only the Attorney General of the United States or the United States Attorney for the District of Columbia can initiate a proceeding for issuance of a writ of *quo warranto*. Drake, 664 F.3d at 784. Because case law holds that this writ may be sought only by the United States, and not by private individuals, Plaintiff lacks standing to bring a writ of *quo warranto* under federal law, and there is no proper basis for this Court to retain jurisdiction over this action. See e.g., Bhambra v. County of Nev., 2010 WL 3258836 at *3 -4 (E.D.Cal. 2010); Allah v. Robinson,

2007 WL 2220258 at *2 (W.D.Wash. 2007); United States v. Machado, 306 F.Supp. 995, 1000 (N.D.Cal.1969).

 Accordingly, Plaintiff's motion for a writ of *quo warranto* is DENIED.

IT IS SO ORDERED.

Dated:  October 28, 2014       _____
                   SENIOR DISTRICT JUDGE

4